I represent Mr. Rodriguez in this appeal of the denial of the motion to suppress the revolver and ammunition that officers found in the jacket that police located during a traffic stop on the backseat floorboard of the Honda Accord in which Rodriguez had been traveling as a passenger. As I understand it, there's not any law in this circuit that specifically addresses a with a jacket. Is that right? That's correct, Your Honor. It's a matter of first impression. The district court determined that Mr. Rodriguez had no standing to challenge the search of the jacket because he had neither had nor claimed any ownership or possessory interest or reasonable expectation of privacy in the Honda Accord. That was wrong.  He had no expectation of privacy in the inside of the jacket that he had clearly possessed and worn inside the car moments before the traffic stop. Alternatively, this court should hold on plain error review that the search of the jacket was a trespass and therefore a Fourth Amendment search that Mr. Rodriguez was entitled to challenge as unreasonable. Because the district court did not make any findings or determinations on whether any exception to the warrant requirement applies, which matters to whether the search was reasonable, we're asking the court to vacate and remand for further proceedings, similar to what happened in U.S. v. Bean, which we've cited in our opinion. A passenger like Mr. Rodriguez can have a protectable privacy interest in his own property seized from a car, even if he is not the car's owner, so long as he does not abandon or deny ownership of that property prior to the search. We know this from U.S. v. Irohita, where a car's passengers had standing to challenge a warrantless search of a duffel bag that was found in the trunk. On the standing issue, the court reasoned in that case that the passengers had standing to challenge the search because neither passenger—there were three occupants in the car—neither passenger denied ownership of the duffel bag prior to its search and therefore neither has abandoned the luggage. A passenger can have a reasonable expectation of privacy with respect to the contents of his luggage, as shown in prior cases like U.S. v. Jarrus and U.S. v. Buckner, which I've cited in my brief, which is the case involving a shoulder bag left in someone else's car. Was there any evidence that the officer saw a bulge in the pocket or anything? In other words, was it something, maybe a hand sticking out of the pocket or anything? There was no testimony that anything was shown sticking out of the pocket. On direct examination, Officer Foster was asked, when you found the jacket, did you find anything in the jacket? He answered, I found a gun. The district court, in its oral findings, stated that, quote, he found a jacket matching the pants of the defendant here and in that jacket was a hidden revolver that was fully loaded. And the government, in its brief on appeal, says the gun was found inside the jacket. And if you look at the video, we do have a video that when, after Officer Foster shows the other officer the gun he has found, he's taking it out, it looks like he's wiggling it, although the camera is not exactly clear and it appears that the gun was found in a pocket. Because the pockets, the gun's right next to it and there's a wide open pocket right there. He puts it down. That's the Foster video. I'm sure it would have been discovered if he'd had the jacket on and patted him down, which he would have had the right to do. Right, but he was not wearing the jacket when he was removed from the car. But if he patted it in the back seat, that wouldn't be, would that be a problem? If he had done a Terry Frisk? If he had patted it, then why, when he saw it? Well, at that point, Your Honor, he was already handcuffed in the back of the patrol car without the jacket on. So the search of the jacket happened after our client, Mr. Rodriguez, had already... I understand that, but when he saw the jacket, if he had just patted it and felt the gun, would that be... Oh, I see what you're saying. No, Your Honor. We would actually contend that that actually would be an invasion of privacy, kind of like in the United States versus Bond, or Bond versus the United States was the Supreme Court case from 2000, where the Supreme Court held that a law enforcement officer's physical manipulation of an opaque bag that a passenger had carried under a cross-country bus and placed in a rack above his head, that violated the Fourth Amendment prohibition against unreasonable searches and effects. The court in that case reasoned that although the bus passenger had an expectation that his bag might be handled by bus employees or other passengers, he did not expect that the employee or other passenger would feel the bag in an exploratory manner. So we would... Our argument is that jackets should have at least the same expectation of privacy as a luggage. Why wasn't this permissive as a protective sweep? I mean, sure enough, after the fact, there was, in fact, something dangerous there, which was a weapon. But why wouldn't this fit neatly within the protective sweep theory? A couple of reasons, Your Honor. In Michigan versus Long, it said that an officer can search the passenger compartment of a vehicle limited to areas where a gun or a weapon may be hidden if he has an objectively reasonable belief that a person poses a danger and may gain immediate control of weapons. But here, the two men were already handcuffed in the back of the vehicle at the time of the search. And the district court did not make any finding that there was a realistic possibility that either man, one of whom was under arrest, the other who was detained, our client was detained, and neither having a license, driver's license, would be permitted to reenter the car at any point in the encounter. As I understand, not specifically to the points you just made, but as I understand what happened, the officers saw him removing the jacket or it looked as though he might be removing the jacket when the car was either stopped or was being stopped, and a reasonable officer might conclude from that that he was trying to hide something, perhaps something dangerous, such as a weapon. Well, the testimony was that it looked particularly with the movements and the slow roll of the car, they thought it was a possibility that there might be hiding drugs or a weapon. That's true. But, again, our position is that once the two had been removed from the car, we remember that the search happened after they were already handcuffed in the back of the car. So this case is not like US v. Wallen where the suspect was in handcuffs. That's a Fifth Circuit case from 2004 where the suspect was in handcuffs at the time of the search, but the district court made a finding of fact that there was a reasonable possibility that Wallen would have been returned to his vehicle, and in that case it's because it was possible that the officer might have believed the suspect that he had a right to be carrying the guns that were in his car. In this case, the district court made no finding. That's a factual, the possibility of whether they would be returned to the car is a factual matter. The district court made no finding, and in fact, Officer Foster testified at ROA 302 Line 8 that if there had been no gun in the car, perhaps Mr. Rodriguez would have been allowed to leave because there would have been no basis to arrest him, but, quote, but he wouldn't be taking the car. Counsel, I appreciate your response to Judge Smith's question, but I understood it a little differently, and to the extent that you answered it, let me rephrase it the way I understood it, was that the officers pull up, as the facts are set forth in the brief, the officers pull up behind the vehicle. The vehicles are moving, and they see him shed a jacket. It's like 40 degrees. He sheds the jacket and throws it in the back seat or on the floor of the car. Why is that fact alone? Regardless of whether they're in handcuffs later or in the back of the police cruiser or whatever happens later, wouldn't that scenario alone excite enough interest for the officers to find the jacket? It would seem to me that he's distancing himself, the defendant is distancing himself from something in the jacket, whether it's drugs or a firearm or whatever. He's taking an action to evade that being discovered. Is that not a fair characterization? I have a couple answers to that. First of all, as for the protective suite, that exception applies only if the person can gain immediate control of the weapons. So that's why it matters that they were in handcuffs. As for the abandonment argument that you're making, first of all, the district court did not find that his actions were consistent with abandonment, and it's our position that would be something for the district court to find in the first instance. Anyways, Mr. Rodriguez did not abandon the jacket by removing it and placing it on the backseat floorboard, because relinquishing physical control of an item is not the same as abandoning it. We've cited a Tenth Circuit case, Miller v. Baird, in our brief for that, and also we've cited Smith v. Ohio, which is a Supreme Court case from 1990, holding that the defendant did not abandon his paper bag when he threw it on the hood of his car before speaking to police. Also, Rios v. United States, a Supreme Court case from 1960, which said that a passenger who lets a package drop to the floor of the taxi cab in which he is riding can hardly be said to have abandoned it. There's no evidence in this case that Mr. Rodriguez expected that his jacket, which was within his arm's reach in the car, would be moved or disturbed by anyone else. He was separated from the car, and thus his jacket, when he was ordered to get out of the car. And our argument is that it can't be said that he forfeited a possessory interest in the jacket simply by leaving it in the car any more than an emergency room patient would forfeit the possessory interest and his rights to clothing if he's carried in the door of the emergency room, the clothes that are taken from him. It has happened in the U.S. v. Neely, the Fifth Circuit case from 2003. I understand that the officer said that they would not allow the defendant to drive the car away, but they didn't foreclose letting him get back in the car to get his coat, did they? Well, our position is that there would not have been any realistic possibility of that happening when he had no license, he was detained, and there's no evidence that there would be a realistic possibility that the officers would have allowed him to go get his coat. I mean, he wasn't under arrest. He was detained at that time. He did not have a license. The car was not going to be released to him. But the court has agreed that if they cut him loose on the highway, why wouldn't he go back and get his jacket? Well, Your Honor, at that point the encounter would be over if he was already released and he was off on the highway and the police had gone off somewhere else. And, again, our position is that whether there's a reasonable possibility that he would have been allowed back in the car, that's a finding of fact. That, as Wallin makes clear, because in that case, actually, the reason why the court found that the protective sweep was allowed was because the district court had found, as a matter of fact, that there was a possibility that the man that was handcuffed in the car might be allowed back in the car at some point during the encounter. We don't have that here. And so that's part of the reason why we've asked for you to remand the case so the district court can address, in the first instance, whether any of these exceptions to the warrant requirement applies, including protective sweep, because this is too many factual issues that have not been resolved. And, of course, our position is that there was no reasonable possibility that he would have been allowed back in the car. Your Honors, if I may, I'd like to briefly touch on our alternative argument. It's on plain error review. We've conceded that. But I believe that it's plain that the search of the jacket was plainly a trespass and, therefore, a First Amendment search that Mr. Rodriguez was entitled to challenge and that the error was plain in light of Richmond, United States v. Richmond. That's a Fifth Circuit case from 2019. In Richmond, this court held that under the property-based trespass test of United States v. Jones, a state trooper's act of pushing his fingers against the tire of a vehicle, which is an effect, to find out what's inside was a trespass and thus a Fourth Amendment search. Our argument is that if pushing fingers against a vehicle's tire qualifies as a Fourth Amendment search, then rummaging through a jacket found inside a car plainly qualifies as one because both are a common-law trespass to a chattel. That is, by intentionally bringing about physical contact with the jacket and thereby intermeddling with it, the trooper committed a trespass to a chattel. We've cited the restatement of torts in our brief for that. Also, there's no question that the manner of inspecting this jacket, which is a personal effect, was a physically invasive attempt to obtain information about what was inside. And in United States v. Jones, and later Florida v. Jardines, the Supreme Court made clear that if the government obtains information by physically intruding on a person's houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred. And, Your Honors, we argue this plaintiff's error did affect Mr. Rodriguez's substantial rights and the fairness, integrity, and public reputation of the proceedings because it was an unreasonable action that violated the Fourth Amendment, his Fourth Amendment rights, and led to discovery of incriminating evidence in the firearm. And, of course, in cases like this, the ultimate question is whether the conduct was reasonable. Our position is that it's not reasonable because warrantless searches are per se unreasonable unless they fall within a well-established exception, and no exception applies here, unlike in Richmond, where this court found that there was probable cause to believe that a wobbly tire posed a safety risk, and so, therefore, it was okay for the officer to tap it because that might have been a traffic violation, a misdemeanor traffic violation. So, Your Honors, I see my time is up. I'll reserve the rest of my time for rebuttal. Yes, you have reserved time for rebuttal. Thank you, Mr. Martin. All right, I will let you pronounce your last name because I'll probably get it wrong. Thank you, Your Honor. May it please the Court, Loretta Berry for the United States. The District Court correctly applied the Supreme Court's decision in Reikis. Rodriguez has no standing to assert a Fourth Amendment claim in this case because he has no possessory interest and no legitimate expectation of privacy in either the car or the hoodie. First, possessory interest. It's unclear who the hoodie found on the backseat floorboard behind Rodriguez belonged to. Now, in his brief and in his 28J letter, Rodriguez asserts ownership by citing this court to his suppression pleadings. But the District Court relied upon the live testimony and the body cam videotapes introduced at the suppression hearing to conclude that Rodriguez asserted no ownership interest. This court under Scroggins and Wallin pays great deference to live testimony upon which the District Court relies and upon videotape evidence. He didn't disclaim ownership until after he was detained, did he? Well, Your Honor, I would refer the court to the Colbert case, which is an en banc case. Is that right, what I just said?  And that's where we would argue that under Colbert, the en banc case, his actions before the stop, before officers even pulled over the car, before officers even got to the jacket, he had abandoned the jacket. The officer Foster testified at records 248, 276, and 278, quote, I never saw Rodriguez take the jacket off. I didn't know what Rodriguez was doing. Defense counsel, when you searched the sweatshirt, did you know it was his? Answer, no. I didn't think about ownership at the time. Now, both body camera videos at minutes 13 to 1430, you can hear the officers discussing who was the owner of this jacket. They had no idea. Now, second. But does that contrast with anything in the record that indicates they saw him appearing to take the jacket off? All of those discussions occurred afterward. They were trying to, on the videotape, you can hear them saying, did it look like he had the jacket on before? Yes, he did. And that was after they discovered the gun, Your Honor. So it's not, they didn't have the discussion beforehand. I thought while they were following the car, they saw him do what they thought was removing his jacket. While they were following him, only Officer Foster and Officer Chisholm saw him making all kinds of movements. And at the suppression hearing testimony, he said, it looked like he might have been taking a jacket off. He was lifting his arms up. But he absolutely never says, I saw him remove the jacket. Because he quotes the quote I just said. He never saw him take the jacket off. They weren't sure what he was doing. I'm sure I understand that. But also the court agrees. And the other driver had a jacket on. And somebody else in the car, and the jacket kind of matches his pants. So, I mean, isn't there good circumstantial evidence to indicate that this was his jacket? Well, I think at the time the officers searched it, which is the test that the court looks at, that wasn't something that they thought about at the time. And his disclaiming ownership is relevant there. Because they said, is this your jacket? And he said, no. I thought the government was relying somewhat on his removal of the jacket to indicate that he was taking it off, knowing that they were being stopped, and that he was doing that because the jacket contained some sort of contraband or weapon. My point is, I don't think the government can have it both ways. Do you see what I mean? I do see what you mean. And the reason that I briefed it that way is because, first of all, it was unclear who it belonged to. That's possessory interest. If he did, if the jacket really was his, which we know now it was, but the action of placing it behind him on the backseat floorboard of the car is an abandonment action under the court's holding. And that's why I briefed it the way I did, under both avenues, because it's not clear, we argue, it's not clear from the testimony in the body cameras. But if it is clear that he owned it, his actions disclaimed ownership. He did not, he argues that he didn't expect the hoodie to be disturbed in the area that he put it behind him on the backseat floorboard. That argument's been squarely rejected by the Supreme Court in Rikers. Almost on identical facts, there was a valid traffic stop, valid detention. Officers searched the vehicle and found a rifle under the front seat passenger side. The Supreme Court held that a passenger, just by mere means of a passenger, has no legitimate expectation of privacy under another person's seat. And here, it's even stronger because it's under the backseat floorboard of where he was sitting in the front seat. Now, he relies upon his statements that he made disclaiming ownership, but under Colbert, as I mentioned before, on Bonk, this court has held that your actions before your stop are very vital and important. And here, the police did not separate him from his hoodie. If it is his hoodie, he took it off before the stop. And it's unreasonable to expect a privacy interest when he knew that the officers were pursuing him. Officer Foster testifies that Rodriguez physically turned around and was fumbling in the backseat. Also, we know that Pineda passed two driveways when the officers had their lights illuminated and he could have stopped. Therefore, both men knew that the officers were following him. And for that discrete point, I would cite to the Smith case. So, I urge this court to affirm under Rakes on lack of standing. And no Fourth Amendment analysis is needed. But under the plein air... We have the, as was mentioned earlier, we have the circuit precedent regarding luggage. But I'm not aware of any circuit precedent specifically addressing either a jacket that was always in the backseat or a jacket that was being taken off as the vehicle was stopped. My question of you is, would it be helpful, do we need a published opinion in this circuit specifically to address this situation? Is it different enough that we should address it in that way? Or do you think it's subsumed within our already existing case law? I think the facts are unique enough that it would be important to address standing. It doesn't come up that often in the criminal context. So, and I don't, I have not found a case exactly on point, Your Honor. Why wouldn't someone who has something in his pocket expect a privacy right in that, like you would if it was in a duffel bag or any other kind of, I mean, maybe a paper sack? How would you distinguish a jacket and what someone has in their pocket from that? Well, the question you gave, he would presumably still be wearing the jacket. It's still associated. I see it in the backseat of the car. In the backseat of the car. Or on the floorboard. Well, it just wasn't, you have to, under the Supreme Court's holdings, you have to assert some privacy in it. And if you, if officers or people have no idea who it belongs to, or if you by your legitimate expectation of privacy in something that you put in your jacket that you put in the backseat and abandoned. Well, that abandonment is a pretty big if, though. I mean, if you take a jacket off and toss it in the backseat, you don't necessarily know where it's going to go. Well, that's true. That's true. But you also have to look at the overall facts in the case and from what the officers found and from what he said to them after. It is relevant, even though the statements that he made that it wasn't his has to be considered as well. Well, but doesn't the case follow a distinguish between just claiming it before the search and after the search? It does. It does. But his actions by the way that he knew the cops were pursuing him suggests that, and I think under the Miles case, this is the best way I can answer it. It is plausible what you're saying, Your Honor. It is not inconsistent with innocent action. The question is whether the district court's ruling was reasonable and was it plausible. And under Miles, this court doesn't require absolute certainty. And it doesn't disclaim innocent actions. Those are allowed to. Innocent, reasonable explanations can exist alongside the court's ruling that this was not an innocent action. I hope you're going to address protective sweep. I am, Your Honor. I am. The protective sweep, there's no need to remand this case for protective sweep because unlike the cases that the defendant cites, here we have undisputed, no conflicting testimony at the suppression hearing that's under Ibarra Sanchez. So this protective sweep was necessary for the officers for their safety and for the baby that they found in the backseat immediately as they exited. This was a very specialized task force that was assigned to a high crime, gun, and drug area. These officers were part of a task force assigned to South Gessner and Bissonette. They noticed that the car straddled two lanes. They were concerned that perhaps the driver was intoxicated. When they pulled up next to him, the officer, Pineda, blocked their ability to pass. After the officers illuminated their lights, they passed two driveways, and Pineda passed two driveways and did not stop. For Officer Foster, this was a big alarm. They see the constant movement. Both officers testify that, in fact, Chisholm was worried that this constant movement was hiding a weapon, that perhaps they were hiding a weapon. That was at record 176, 247, and 248. When they finally make a slow roll stop, they do so at an apartment complex that's specifically known for MS-13 gang activity. The body camera and the testimony shows that this was really an intense encounter under Wallin. At minutes 245 of the Foster video, he had his gun immediately ready. At minute 315, Officer Chisholm, you hear Pineda, the driver, being very argumentative with him. Now, Rodriguez admits to the officers very quickly that he had been shot in the face 20 days earlier. From the totality of those circumstances, a reasonable, prudent officer would suspect danger for himself and for the baby. That's consistent with Long and Wallin and Sanders, that innocent people, innocent bystanders, including children, are also included in the protective sweep analysis. In the court's oral ruling at 332, the district court stated that Officer Foster searched the car where the baby was kept and tried to take care of the baby as well. Officer Foster's video shows he was not rummaging. In one minute, minute 7 to minute 8, he looked in the area where a gun or a threat could have been hidden. He opens up a fanny pack and he looks around the area of the baby. He opens the center console. He looks in the drug pockets and under the seat. This is not a rummaging. This is looking in areas in containers where a weapon could be found. Under the trespass argument, that fails under plein air review under this court's holding in Boudouin, which we cite in our brief. That case was issued after Jones and after Rakes. And, I'm sorry, that case cites Jones and Rakes, and it was issued after Richmond, which is the only case that the appellant cites in their brief. And it points out that the defendant must still establish a property interest to assert a Fourth Amendment claim. Now, Richmond is distinguishable because there was one driver. She had a clear property interest to challenge the tire tap. Here, we have two occupants. There's no clear property interest in the hoodie, and if there is, his oral statements disclaimed any property interest in the hoodie. He said he did not own it. And even if there was a property interest, as I've already stated, the search was reasonable under protective sweep. If there's no further questions, I respectfully request that the district court's order be affirmed. Thank you. Thank you, Ms. Berry. Mr. Barton, you've saved time for a bow. Your Honors, I'd first like to respond to my friend's suggestion that protective sweep was permissible to protect the baby. This protective sweep exception is focused on danger to police or others caused by suspects in cars, not non-suspect babies in car seats. That was the testimony that it was a dangerous area, but there was no testimony that anyone in that area would have accessed the car while it was stopped and gotten to a weapon. Nothing of that nature. But there was testimony or there was evidence, as I understand it, that the car didn't stop at the first two or whatever available driveways, but stopped at a driveway at a complex that was known for dangerous activity. That's correct, and we're not denying that that was the testimony. But the protective sweep happened after these two suspects were already handcuffed in the back of the car, as I was arguing before. And at that moment of the protective sweep, there was no danger at that point, and there was certainly no testimony that there was a danger that the suspects, that Mr. Rodriguez and Mr. Pineda, could have gotten back in the car and harmed the baby. Are you saying that they have to conduct the protective sweep before they take care of whatever they need to do with the suspects? I don't quite understand. They've got to do it in some kind of a sequence, right? Do you put the suspects first in the protective sweep or vice versa? That's correct. I mean, oftentimes these things are done simultaneously when they're still there within the area of the car. So they're sweeping to make sure that there's nothing in the immediate area of the suspect. When they're handcuffed in the car, the key case is Wallin, which I've discussed before. There has to be a reasonable possibility that the suspects would gain access to the car again in the course of the encounter. And as I've said, that's a fact finding that has not been made yet. Our position is that there was not a reasonable possibility that they would have gotten access to the car and a weapon in the car during this encounter. As for the baby, a reasonable, prudent officer would not believe that the safety of this baby was in danger due to weapons. He was secured in a car seat. In fact, Officer Foster seemed comfortable leaving the jacket and gun in the car seat right next to this baby when he was showing it to the other officer. The baby would have to have some extremely long arms to reach a weapon in the car. So the idea that this baby would gain immediate control of the weapons is just not plausible. Now, the government is sort of hinting at a community caretaking exception here, but they haven't argued that, and the District Court didn't find that. And it would be our position on remand if this went back that any kind of community caretaking activity has to be totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. The case would be K.D. v. Dombrowski, a 1973 Supreme Court case, which actually is discussed a little bit in a footnote in the Richmond case in our brief. And I would also note that Rowett 232, Officer Chisholm, did testify that all the circumstances led them to believe a crime was taking place at that time. So they're simultaneously… They ran the record checks. When they brought them back to the car, that's what Officer Chisholm brought Pineda back to do, was to run the record checks. And then simultaneously, Officer Foster is bringing Mr. Rodriguez, our client, to detain him in the back of the vehicle. I'm sorry? What did they find? I can't recall what all they found in Pineda's criminal history. I don't know the answer to that question. If it's important to the court, I could let you know after the argument in a letter if you'd like. Now, as for Rakus, the problem in Rakus v. Illinois was that the defendant there did not assert a possessory interest. If you look at footnote 1 of Rakus, they're discussing that's the problem there. Now, we have asserted it by invoking Irohita and in our motion for reconsideration in district  So that's… Rakus doesn't mean we lose. As for a reasonable expectation of privacy in jackets, jackets often contain pockets like bags that contain personal items. In this case, the court found that there was a hidden revolver in the jacket. So our client was attempting to conceal something in the jacket. So that's more evidence he had a subjective expectation of privacy. Thank you, Your Honor. I see my time is up. Yes. Thank you, Mr. Martin. The case is under submission. Next case, Gamow v. Forum Energy Technologies, Incorporated.